### B. J. FINE ET AL. V. G. R. FREEMAN.

#### No. 6889.

1.   **Practice — Evidence.** — Plaintiff sued for a stipulated share in lands located for the defendants under a contract executed by part of the defendants, but without showing authority to act for the others, some of whom were minors. The petition set up the facts, and as a link in his title alleged the contract. On objection to it, when offered in evidence without proof of its execution, that the contract did not bind the defendants who had not authorized it, *held*, that the allegation in the petition setting up the contract as relied upon as a link in the title of plaintiffs did not relieve him from proving the execution of the instrument.

2.   **Evidence—Power—Recitals.**—Recitals in a contract executed by parties not personally acting in its execution, that the parties executing it acted in the representative capacity stated, will not prove the existence of such relation so as to bind others.

3.   **Fact Case.**—In absence of power in those making the contract for the location of the lands to act for the others interested, such contract would only bind those signing it, or approving it thereafter. See facts.

4.   **Location of Land Without Authority.**—If land be located without authority from the owners of the certificates used in such location, the acceptance of the benefits of such location would not alone give the locator any right in the land, or divest the owners of the certificates of any title in the lands.

#### ON REHEARING.

5.   **Affidavits to Show Jurisdiction in Supreme Court.**—Where writ of error is sued out after the expiration of two years from the final judgment, by minors or married women, and there are others not so protected, it is a jurisdictional fact what of the plaintiffs in error have been protected by coverture or minority until within two years before the writ of error was applied for. Affidavits will therefore be heard in the Supreme Court as basis for its action in determining as to the parties so protected.

6.   **Practice in Supreme Court—Writ of Error.**—Where writ of error is sued out more than two years after the rendition of the final judgment, and only a part of the plaintiffs in error are protected by minority or coverture, the writ of error should be dismissed as to all others not so protected.

Error from Travis. Tried below before Hon. J. P. Richardson.

The cause was tried at the fall term, 1875, of the District Court of Travis County. Partition was confirmed December 12, 1876. Petition for writ of error filed March 22, 1889.

No statement is necessary.

*T. S. Henderson* and *Monteith & Furman*, for plaintiffs in error. — 1. The court erred in allowing the power of attorney [see opinion] to be introduced in evidence, for the following reasons: (1) At the time of its filing in this case it was an unrecorded instrument. (2) At the time of its introduction in evidence it had not been recorded in any county where any part of the land affected thereby was situated. (3) If it did not affect land, article 3716, Paschal's Digest, did not authorize its admission in evidence. Pasch. Dig., arts. 1445, 3716, 4988, 4989; Hancock v. Lumber Co., 65 Texas, 230; Clow v. Winfield, 15 Texas, 451; Beal v. Alexander, 6 Texas, 541.

2. The court erred in admitting the power of attorney of Fine and Sappington and others to Raymond, Freeman & Co. to be introduced in evidence, because there was no evidence that James Sappington was curator of the estate of Melsor Fine, or that Sebastian Sappington was the guardian of the heirs of Benjamin Fine, or that Joshua Fine was administrator of the estate of Elisha Fine, deceased; and because said pretended curator, guardian, and administrator could not legally make such an instrument, and thereby bind or convey any portion of the estate of his ward, testator, or intestate. Tucker v. Murphy, 66 Texas, 355; White v. Jones, 67 Texas, 640; Terrell v. Martin, 64 Texas, 121; Stone v. Ellis, 69 Texas, 325; Keen v. Casey, 22 Texas, 412; Burris v. Wideman, 6 Texas, 231.

3. The suit of plaintiff in this cause is based upon a contract alleged to have been made between Sebastian Sappington, James Sappington, and Joshua Fine, as agents of the heirs of Charles Fine, deceased, and Raymond, Freeman & Co., which was recognized by F. F. Fine, Theodosia Fine, and Margaret Elba Stillwell, a married woman; and the evidence fails to show that any one of said persons was authorized to represent or bind any share or interest of any heir of Charles Fine, deceased, excepting Joshua Fine and F. F. Fine, who acknowledged their authority; and no contract was shown by which plaintiff was entitled to receive any portion of the land in controversy for locating the same; especially he was not entitled to receive any part of the land of the other heirs of Charles Fine, part of whom were minors and not represented by any one duly authorized by any court. Grimes v. Smith, 70 Texas, 217; Sypert v. McGowan, 28 Texas, 640; Stone v. Ellis, 69 Texas, 325; Ross v. Mitchell, 28 Texas, 150; House v. Brent, 69 Texas, 27.

4.   The accepting of the benefits conferred upon the defendants by the location of their land certificates by Raymond, Freeman & Co., and the claiming of the land as their own by virtue of said location, would give to plaintiff no right of action against the defendants for part of the land, unless said defendants had promised to pay for the same in a part of the land to be located; and would give no right to a money judgment against defendants unless they had promised to pay a stipulated sum or the value of such services; and the heirs, who are not represented by any contract with Raymond, Freeman & Co., would not be liable to any judgment in land or money for such services. . Grimes v. Smith, 70 Texas, 217; Stone v. Ellis, 69 Texas, 325; House v. Brent, 69 Texas, 27; Ross v. Mitchell, 28 Texas, 150; Sypert v. McGowan, 28 Texas, 641; Terrell v. Martin, 64 Texas, 121; Teel v. Terrell, 48 Texas, 491.

*D. W. Doom,* for defendant in error.—The plaintiff having founded his action in part on the power of attorney, and charged that it was delivered by authority of all of the heirs of Charles Fine, deceased, for the express purpose of indicating that Sappington was their agent, and that they approved and authorized the contract he had made for them, and there having been no denial on oath of its execution, the court did not err in admitting it in evidence without proof of its execution or of the agency or representative capacity of its signers.   Pasch. Dig., art. 1443; Waterworks v. White, 61 Texas, 536; Lewis v. Alexander, 51 Texas, 578; Drew v. Harrison, 12 Texas, 279.

FISHER, JUDGE, *Section B.*—This was a suit instituted in the District Court of Travis County, Texas, on the 6th day of August, 1873, by defendant in error, against the following heirs of Charles Fine, deceased: Joshua Fine, Margaret E. Crowe and her husband Henry R. Crowe, Fannie Fine, Margaret Fine, Martha Fine, Melsor Fine and Charles L. Fine, minors; and Felix F. Fine, Harriet Eddy and her husband James Eddy, Theodosia Fine, Ellen Hanson and her husband —— Hanson, Margaret E. Stillwell and her husband Frank Stillwell, Olive Green, widow of —— Green, Ann Lovering, William Apperson, Charles Apperson, and John P. Apperson, a minor, Jane Gray and her husband —— Gray, and the unknown heirs of Charles Fine, deceased.
Citation was by publication.  Plaintiff sought to recover for locating the following lands:  A one-half undivided interest in 1920 acres in Hamilton County, Texas; 640 acres in McLennan County, Texas; 1476 acres in Cooke District, Texas, in two surveys—all patented to the heirs of Charles Fine, deceased; and a judgment for $200 for services rendered in investigating the claims of said heirs as against the State of Texas for land and money.   These services were represented to have been rendered by the firm of Raymond, Freeman & Co. for the heirs

of Charles Fine, deceased, said firm having been employed by said
heirs in the year 1854, by their agents, Sebastian Sappington and Joshua
Fine; that the firm of Raymond, Freeman & Co. transferred their right
to this plaintiff; that under said employment said Raymond, Freeman
& Co. had located and patented said lands, and that defendants had
contracted to pay them one-half of said lands for said services in locat-
ing, and $200 for said other services; also praying for a partition of
said premises, setting apart to plaintiff his interest therein.

Among the several issues presented by the answers of the defendants
is a general denial and a denial of the agency of Joshua Fine or F. F.
Fine and Sappington to represent the heirs of Charles Fine; and that
they had no authority to make the contract as alleged, and denied that
such contract had ever been entered into; and that Raymond & Co.
acted without authority from the defendants in performing any pre-
tended services under the contract.

In 1875 the case was tried before a jury, which resulted in a verdict
in plaintiff's favor for one-half of the land.   Judgment was rendered
in favor of plaintiff for half of the land, and a decree of partition was
entered setting aside to plaintiff and defendants certain portions of the
lands, and all costs were taxed against the defendants.   Plaintiffs in
error, married women and minors, as the heirs of Charles Fine, prose-
cute this writ of error.

In the sixth assignment of error, plaintiffs in error complain that the
court erred in admitting in evidence the following power of attorney:

"Know all men by these presents, that we, Joshua Fine, James Sap-
pington, curator of the estate of Melsor Fine, Sebastian Sappington,
guardian of the heirs of Benjamin Fine, Thomas B. Fine, and Robert
C. Fine, and Joshua Fine, administrator of the estate of Elisha Fine,
deceased, heirs at law or representing the heirs at law of Charles Fine,
deceased, of the city of St. Louis, State of Missouri, do hereby make,
constitute, and appoint Raymond, Freeman & Co., of Austin, State of
Texas, our true and lawful attorneys; for us and in our names, places,
and stead to do and perform all things necessary to obtain the land and
pay due to said Charles Fine, or his legal representatives, from the
government of the State of Texas, for services during the revolution;
to prosecute all suits for the recovery of the same;  to compromise with
any and all persons holding, claiming, or having possession of said lands,
as they may deem fit;  to draw from the Treasurer of the State of Texas
all moneys which may be due said Fine for military services or for
losses sustained during said service under the late Republic of Texas;
and generally to do and perform all things in relation to the interest
of said Charles Fine in Texas which we could do if personally present;
hereby ratifying and confirming all our said attorneys shall lawfully
do in the premises.

"In testimony whereof we have hereto set our hands and seals this 14th day of March, A. D. eighteen hundred and fifty-four.

|                          |        |
|--------------------------|--------|
| "JOSHUA FINE,            | [Seal] |
| "JAMES SAPPINGTON,       | [Seal] |
| "SEBASTIAN SAPPINGTON,   | [Seal] |
| "THOS. B. FINE,          | [Seal] |
| "ROBT. C. FINE,          | [Seal] |
| "JOSHUA FINE,*           | [Seal] |

*"Administrator estate of Elisha Fine."

The admission in evidence of this power of attorney was objected to, because:

"1. On October 13, 1874, the defendants accepted service of the filing of the original unrecorded power of attorney, and thereafter, to-wit, on June 16, 1875, the said original, without leave of court or notice to these defendants, was withdrawn from the file of papers in this suit and recorded in the office of the clerk of the District Court of Travis County, and thence after its record returned to the office of the Treasurer of the State of Texas, where it had remained on file, and was not placed on file with the papers of this cause thereafter for the inspection of defendants or their attorneys, and was not by the plaintiffs again filed or produced in court until offered in evidence; that therefore defendants had no notice of the same.

"2. There was no proof of the execution of the same offered by plaintiff, and the same had not been recorded in the county where the land or any part thereof lies, and three days notice of filing the same given as provided by law.

"3. The instrument does not prove itself, and no proof of its execution was offered.

"4. There was no evidence that James Sappington was the curator of Melsor Fine, or that Sebastian Sappington was the guardian of the heirs of Benjamin Fine, or that Joshua Fine was the administrator of Elisha Fine, deceased; and because the said pretended curator, guardian, and administrator could not legally make such an instrument, and thereby bind or convey any portion of his ward, testator, or intestate, and that plaintiff could not base his right to recover in this action upon any such instrument.

"5. Said pretended power of attorney did not authorize the said firm of Raymond, Freeman & Co. to locate lands, and could not be introduced as evidence of any claim for services for locating lands.

"6. Said power could not be used in evidence until duly proved by competent testimony.

"7. The same could not affect or bind any of the defendants except those who signed the same."

To obviate the force of these objections the defendant in error contends, that his cause of action in part is founded on the power of attorney, and that in his pleadings it is alleged that it was delivered by authority of all the heirs of Charles Fine for the express purpose of indicating that Sappington was their agent, and that they approved and authorized the contract he had made for them; and that the power of attorney was properly admitted, because its execution was not denied under oath. We do not understand that the defendant in error is asserting title to the land in controversy solely by reason of the rights conferred by this power of attorney; but this instrument was offered for the purpose of showing the authority of Raymond & Co. to look after the interest of the Fine heirs in Texas, and to show the authority of Sappington as the representative of the Fine heirs to enter into the contract with reference to locating the lands by Raymond & Co., and to agree upon the compensation that they would be entitled to for such services. The purpose of this suit was in the main to enforce the contract entered into between Sappington and Raymond & Co., and by reason of that contract recover from the Fine heirs one-half of the land in controversy by defendant in error for services in locating the same, as was agreed upon by Sappington. This power of attorney then becomes important as a link in plaintiff's chain of title in showing the authority of Sappington to enter into the contract concerning the locations of these lands. Plaintiff in setting up in his pleadings this power of attorney as a muniment of title under which he holds as a part of the evidence of his right to the land, will not be relieved of the necessity of proving the execution of the instrument.

This power of attorney is binding upon those that signed and executed the instrument; but in so far as it attempts to bind the heirs of Charles Fine that are not parties to the instrument, it will not have that effect in the absence of authority shown in James Sappington to bind the estate of Melsor Fine, and in Sebastian Sappington to act as guardian of the named heirs of Charles Fine and Joshua Fine, administrator of the estate of Elisha fine. The declaration contained in this instrument, that the parties who execute the paper, act in the representative capacity therein named, is not evidence that they are such representatives, or that they had the authority to execute the instrument, without other proof showing that they had the authority to so bind the estate and heirs they pretended to represent. We do not think it necessary to discuss the other objections urged to the power of attorney. We think the court erred in admitting it in evidence.

It is insisted that the evidence is insufficient to support the judgment. 1. Because the evidence fails to show any contract between plaintiff and defendants by which plaintiff was entitled to receive any portion of the land from defendants for locating the same. 2. Because the power of attorney of S. Sappington and others with Raymond & Co. did

not authorize plaintiff to claim any part of the land in controversy.    3. Because the evidence fails to show that S. or James Sappington or Joshua Fine had any authority or power to act in any way for the heirs of Charles Fine in making the contract under which plaintiff claims the land.

The contract concerning the location of the land and the interest that plaintiff was entitled to for his services in locating was, it seems from the evidence, entered into between Raymond & Co. and Joshua Fine and Sappington, who claimed to represent all the heirs of Charles Fine.    This contract entitled the heirs to pay Raymond & Co. for the location of the land a certain amount in money for each tract, or to transfer to them a half-interest in lieu of the money, as they might elect.    Raymond & Co. after the location made demand for a certain amount of money as pay for their services in locating.    This demand, it seems, was made upon Joshua Fine and Sappington as agents of the Fine heirs, and was by them received, who then, as the agents of the heirs, elected to give Raymond & Co. for their services one-half of the lands.    The patents to the lands were procured by the plaintiff about 1859.    All the lands were patented to the heirs of Charles Fine.    It seems that about the time of the institution of this suit F. F. Fine and Theodosia Fine and Margaret Stillwell, by correspondence with plaintiff, admitted that plaintiff was entitled under the contract made with Sappington to some interest in the lands.    The evidence does not connect any of the other heirs of Charles Fine with the contract or in any transaction with plaintiff concerning it, except in so far as they may be represented by Joshua Fine or Sappington.    The principal objection to this contract is the want of power in Joshua Fine and Sappington to make it so as to bind and conclude the heirs of Charles Fine. The evidence fails to disclose any authority in Sappington and Joshua Fine to enter into this contract and to transfer to the plaintiff one-half of the lands so located.    The heirs of Charles Fine did not delegate to them this power, nor was it conferred by any court that may have had jurisdiction over the persons and estate of the heirs of Charles Fine that were minors, or of any court that had in administration the estates of any of the heirs of Charles Fine.    The evidence shows that guardianship and administration proceedings were pending concerning the estates of some of the Fine heirs.    We think the evidence in the particular noticed is insufficient to support the judgment.

The ninth assignment of error is, that the court erred in giving the following charge to the jury:    "If the person making the contract has no authority from the other defendants to act for them, and they did not ratify the contract or accept the benefits resulting from the services, then the plaintiff is entitled to recover as against all the defendants who made the contract, or ratified or accepted the services rendered under the contract, but not as against the others."

If Raymond & Co. located these lands without the authority of a contract, or if they located them under a contract to which the defendants were not parties and upon which they were not bound, the acceptance of the benefits resulting from such locations would not alone give Raymond & Co. any right in the lands or have the effect to divest the defendants of any title they may have. Grimes v. Smith, 70 Texas, 218; House v. Brent, 69 Texas, 27.

Appellee insists, that if this case is reversed it should only be as to those plaintiffs in error who were not bound by limitation at the time the writ of error was sued out. In so much of this case as concerns the partition of the lands it is reversed as to all the parties in interest. Kremer v. Haynie, 67 Texas, 451. That part of the case that involves the title to the lands is only reversed as to those plaintiffs in error who were not barred by limitation at the time the writ of error was prosecuted.

We report the case for reversal.

*Reversed and remanded.*

Adopted December 1, 1891.


ON REHEARING.

GAINES, ASSOCIATE JUSTICE.—Upon consideration of the motion for a rehearing in this case, we find no sufficient reason for setting aside or modifying the opinion submitted by the Commission of Appeals and adopted by this court at the Tyler Term.

It is insisted, however, in the motion, that our judgment in the case "is not clear or certain, and does not show as to which of the plaintiffs in error the judgment of the lower court is reversed in all things; nor as to which of said plaintiffs in error the judgment is only reversed so far as the same provides for a partition of the lands in controversy," etc. This calls our attention to the fact that at the time at which the transcript in this case was filed a motion to dismiss the writ of error was submitted, based upon the ground that the petition in error was filed more than two years after the final judgment was rendered; and that the motion was not then determined, but was taken for decision with the case. The former opinion practically determines the motion; but in view of the suggestion in the motion for a rehearing, just quoted, we deem it proper to announce our conclusions upon the motion to dismiss.

We are of the opinion that those of the plaintiffs in error who were under disability either of coverture or of minority at the time the final judgment was rendered, and whose disability was not removed more than two years before the petition was filed, were entitled to prosecute their appeal, and that as to them the judgment should be reversed and the cause remanded in accordance with the opinion already rendered; but that as to the others the writ of error should be dismissed. The

question whether any one of the plaintiffs is entitled to prosecute his writ of error is a question as to the jurisdiction of this court, and must be determined by the court upon such evidence as is brought before it. The plaintiffs in error have submitted affidavits as to the infancy or coverture of such of them as are claimed to be under disability, and the defendant in error has submitted none. Upon these affidavits we find, that the following parties plaintiff in error have been under such disability of coverture as to entitle them to their writ of error: Ellen Hanson, Margaret Stillwell, Harriet B. Eddy, and M. E. Crowe; and that Charles Fine and Melsor Fine have been under disability of minority and were also entitled to their writ. As to all others, except the respective husbands of the above named married women, the motion to dismiss is sustained and the writ of error dismissed as to them. This leaves the judgment of the lower court in force as to them, and in partition will entitle defendant in error to any interest they might otherwise have in the lands in controversy.

The defendant in error submits, that M. E. Crowe and her husband have conveyed all their interest in the land in controversy to one Goodson, and that Goodson has filed in this court his conveyance, with a motion to dismiss the writ of error as to these parties. We do not feel warranted in determining the claims of a purchaser pendente lite upon a jurisdictional question, and therefore his motion will not be considered. His rights can be set up and determined in the lower court.

The motion for a rehearing is overruled, and the judgment heretofore rendered will be reformed so as to conform to this opinion.

*Motion refused.*

Delivered February 26, 1892.