SMITH v. PATTON et al. (No. 280–3521.)*

(Commission of Appeals of Texas, Section B. May 17, 1922.)

1. Appeal and error ☞84(1)—Pending motion for leave to file second motion for rehearing does not affect finality of appellate court's judgment.

The pendency in the Court of Civil Appeals of a motion requesting permission to file a second motion for rehearing, which could not be filed as matter of right, as could the first motion for rehearing, does not affect the finality of the judgment of the Court of Civil Appeals so as to deprive the Supreme Court of jurisdiction to grant a writ of error to review that judgment.

2. Appeal and error ☞345(2)—Petition for writ of error to Supreme Court must be filed within 30 days after overruling original motion for rehearing.

The petition for writ of error to review a judgment of the Court of Civil Appeals must be filed within 30 days after the overruling of the original motion for rehearing in the Court of Civil Appeals, regardless of pendency of an application in that court for permission to file a second motion for rehearing.

3. Appeal and error ☞165—Writ of error is not waived by motion to file second motion for rehearing.

A petition to the Supreme Court for writ of error to review a judgment of the Court of

Civil Appeals is not waived by filing in the Court of Civil Appeals a motion for permission to file a second motion for rehearing, though, if the permission had been granted and the second motion filed, the plaintiff in error would be compelled to elect which remedy she intended to pursue.

**4. Appeal and error ⊗⟳345(2)—Uncontroverted affidavit of counsel held to show informal abandonment of motion for second rehearing.**

Where counsel for plaintiff in error made affidavit that he stated to the clerk of the Court of Civil Appeals and to a judge thereof when he presented application for writ of error that he withdrew his pending application in the Court of Civil Appeals for permission to file a second motion for rehearing, and that affidavit was uncontroverted, though the counter affidavit could have been procured from the clerk if the statement was false, the affidavit shows an intention to abandon the motion in the Court of Civil Appeals, although the abandonment was not manifested by a request in writing as would have been the proper method.

**5. Appeal and error ⊗⟳345(2)—Application for writ of error is abandonment of motion for second rehearing.**

The filing of a petition for writ of error for review by the Supreme Court of the judgment of the Court of Civil Appeals was, of itself, an implied abandonment by plaintiff in error of his motion previously filed in the Court of Civil Appeals for permission to file second motion for rehearing.

**6. Abatement and revival ⊗⟳4—Filing second suit does not abate first, but only requires election.**

The filing of a second suit for the same cause of action does not abate the first or amount to a waiver thereof, but only places the plaintiff in a situation where he may be required upon proper pleading to elect which suit he will prosecute to final judgment.

**7. Abatement and revival ⊗⟳8(4)—Second suit for different relief does not affect pending suit.**

A suit to foreclose the lien of a claimant against the assets of the estate which had been already distributed by the executor seeks different relief from a pending suit to recover personal judgments against the executor and the residuary legatees, so that the filing of the suit to foreclose the lien is not inconsistent with the prosecution in Supreme Court of a writ of error to review a judgment of the Court of Civil Appeals in the suit for personal judgments.

**8. Appeal and error ⊗⟳154(1)—New suit for relief suggested by appellate court held not acquiescence in decision.**

Where the Court of Civil Appeals reversed judgment for plaintiff against the executor of an estate and the residuary legatees after distribution of assets of the estate, because the remedy of plaintiff as shown by the facts was foreclosure of a lien against the assets, the institution of a suit to foreclose such lien was not an acquiescence in the judgment of the Court of Civil Appeals which precluded a right to review of such judgment by the Supreme

Court on writ of error, but was merely a precaution to avoid the bar of the statute of limitations if the Supreme Court affirmed the judgment of the Court of Civil Appeals.

**9. Executors and administrators ⊗⟳7—Independent executor not liable for claim after distribution of estate.**

An executor who has completed the distribution of the estate without probate proceedings as directed by the will is not liable to a claimant who thereafter made demand against the estate.

**10. Wills ⊗⟳834—Residuary legatees are not personally liable for claims which can be satisfied from property.**

A personal judgment cannot be rendered against residuary legatees for a claim against decedent which was not presented until after distribution of the assets, so long as the assets of the estate in the hands of residuary legatees which can be identified are sufficient to discharge the claim so that it can be satisfied by foreclosure of the lien against the property.

**11. Judgment ⊗⟳252(5)—Prayer for general relief does not authorize relief inconsistent with special prayer.**

A prayer for general relief will not authorize a judgment inconsistent with the specific relief prayed for.

**12. Judgment ⊗⟳252(1)—Foreclosure of lien against assets is inconsistent with special prayer for personal judgment against legatees.**

A foreclosure judgment on property in the hands of the legatees is inconsistent with a prayer for personal judgment against the legatees, so that foreclosure cannot be decreed under a prayer for general relief where the specific relief prayed was for personal judgment against the legatees.

**13. Appeal and error ⊗⟳1175(1)—Court cannot render judgment not responsive to pleadings.**

Regardless of what the evidence may be, the Supreme Court cannot render a judgment which would not be responsive to the pleadings, so that it will not render judgment for foreclosure against assets in the hands of legatees where the pleadings sought only personal judgment against the legatees, and especially since the ownership of the property may have changed since the trial so as to prevent foreclosure.

**14. Wills ⊗⟳834—Residuary legatees personally liable for claims if property cannot be identified.**

If property received from the estate by residuary legatees has been disposed of to innocent purchasers, or its form so changed that it cannot be identified, a personal recovery for its value can be had against the legatees by a claimant against the estate.

**15. Appeal and error ⊗⟳1175(1)—Error in overruling exception does not authorize appellate court to render judgment.**

The erroneous refusal of the trial court to sustain an exception to a pleading does not au-

thorize the appellate court to render a judgment against the party filing the pleading since, if the exception had been sustained, that party would have an opportunity to amend the pleading to meet the objection.

**16. Appeal and error ⬤➞1175(1)—Refusal of peremptory instruction for same reason exception was overruled does not authorize rendering judgment.**

Where an exception to a pleading was overruled because of an erroneous theory of the law, and the trial was held under such erroneous theory, error in refusing a peremptory instruction for defendant based upon the same theory of the law does not authorize the appellate court to render judgment for defendant and thereby deprive plaintiff of an opportunity to amend and present her case under a correct theory.

**17. Appeal and error ⬤➞1175(1)—Case should be remanded if ends of justice will be better subserved thereby.**

Where, upon reversal of a case, it seems probable that the ends of justice will be better subserved by remanding than by rendering judgment, the former course should be pursued.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Ida J. Smith, as executrix, against A. C. Patton and others. Judgment for plaintiff was reversed, and judgment rendered for defendants by the Court of Civil Appeals (221 S. W. 1034), and plaintiff brings error. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded for new trial.

Harry P. Lawther and Brooks, Worsham & Rollins, all of Dallas, for plaintiff in error.

Etheridge, McCormick & Bromberg, of Dallas, for defendants in error.

POWELL, J. The nature and result of this litigation have been admirably stated by the Court of Civil Appeals as follows:

"This suit was instituted by Ben W. Smith, and after his death, pendente lite, prosecuted by his executrix, against A. C. Patton, independent executor of the estate of Dr. E. G. Patton, and against said A. C. Patton and C. H. Patton, residuary legatees under the will individually. The petition, which was an amended one, asserted, as against the estate of Dr. E. G. Patton, an agreement, on the part of Dr. Patton, grounded upon a valuable consideration, to bequeath Ben W. Smith $10,000 at his death and his subsequent failure to observe the contract. Against the executor and the residuary legatees as such, it was charged that the reasonable value of the estate of Dr. Patton received by the executor was $125,000, and, after the payment of all debts and special bequests, the executor had distributed the estate, and that A. C. and C. H. Patton, as residuary legatees, had received and accepted from the executor of the estate, and then had in their possession, property reasonably of the cash value of $75,-000. Prayer in substance was for judgment against A. C. Patton, executor, as such, and against A. C. and C. H. Patton, residuary legatees, personally, for $10,000 and interest, in proportion to the value of the property received by them from the estate. To meet exceptions which asserted that the petition disclosed no liability against plaintiffs in error for the reason that it failed to disclose what property of the estate came into possession of the executor, as such or into possession of the residuary legatees, defendants in error filed trial amendment, in which it was charged that the executor, as such, after his qualification and the probate of the testator's will, had received from the estate property of the aggregate value of $109,444.80, same being particularly enumerated, which he had at that time 'entirely distributed * * * among the devisees and legatees, * * * and that there now remains in his hands as executor no part of said estate which has any appreciable value, and that as residuary legatees and devisees in said will A. C. Patton and C. H. Patton had received of the assets of said estate an amount largely in excess of the claims of plaintiffs herein and amply sufficient to satisfy said claims.' The property alleged to have been received by the legatees was scheduled and consisted of realty, promissory notes, corporate stock, and cash, and was alleged in the petition to be of the value of $75,000. It is appropriate to state here that the pleading of A. C. Patton, executor, also alleged that he had distributed the entire estate of his testator. The pleading being in substance as recited, plaintiffs in error, A. C. and C. H. Patton, individually, excepted to same on the ground that the facts alleged did not entitle defendants in error to a personal judgment against either of the residuary legatees, which was overruled, and to which action of the court plaintiffs in error excepted. There was, on the pleadings recited, a trial by jury to whom the issues of fact were referred for special verdict in form of the usual interrogatories. Prior to submission of the fact issues to the jury plaintiffs in error requested, and the court refused, a peremptory instruction in favor of the executor, A. C. Patton, as such, and a similar instruction in favor of A. C. Patton and C. H. Patton, individually, to which action of the court they excepted. The facts found by the jury and included in the judgment are in substance these: The testator, Dr. E. G. Patton, did, prior to his death, promise Ben W. Smith, if he would dispose of his business in Sulphur Springs and remove to and associate himself with Dr. Patton in business in Dallas, the latter would bequeath him $10,000 at his death. Smith, in consideration of the promise, did dispose of his business, remove to Dallas, and become associated with Dr. Patton in business. Dr. Patton did not, at his death, bequeath Smith the promised $10,000. There were other and adverse findings on matters of defense urged by plaintiffs in error not necessary to enumerate. Upon the special verdict judgment was for the defendants in error for the aggregate sum of $11,800 against A. C. Patton, executor, as such, and against A. C. and C. H. Patton, the residuary legatees, individually. Thereupon appeal was perfected to this court.

⬤➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The record on appeal is the usual one, save that it is not accompanied by a statement of facts.

"As we have indicated, when defendants in error concluded the introduction of testimony, plaintiff in error A. C. Patton requested the court to peremptorily direct verdict for him as executor on the ground that it appeared from the pleadings of both parties that the executor, at the time of trial, had distributed or passed all assets of the estate to the devisees and legatees. The request was refused, and the court's action is assigned as error. Our probate acts recognize the right of persons capable of making a will to have their estates administered independently of the probate court, save the probating and recording of the will and the return of inventory, direct how debts and claims may be enforced, and provide that execution shall run against the estate in the hands of the executor. Articles 3362, 3363. 2005, Vernon's Sayles' Tex. Civ. Stats. Upon death of a person leaving a will, the estate immediately vests in the devisees, subject to payment of the debts of the testator, save that which is exempt from such payment, but that the executor shall nevertheless be entitled to possession of the estate for the purpose of administering same. Article 3235, Id. Incidentally creditors may require independent executors, in case of waste, mismanagement, or misapplication of the estate, to execute bond, and, as against the beneficiaries under the will, may require security to be given for the payment of their claims or debts. Article 3364, Id., et seq. The several provisions cited have been elaborately construed, and, as applicable to the issue under consideration, it has been declared in substance that when the executor, who is authorized to act independently of the probate court, in good faith, and not in fraud of the rights of creditors, passes the estate committed to him to those entitled to receive same, they lose control of same and may not thereafter administer same for creditors, and are not as a consequence further accountable to creditors in their representative capacity. Parks v. Knox, 61 Tex. Civ. App. 493, 130 S. W. 203, and cases cited. As we have shown, the pleadings of defendants in error assert unequivocally that the estate of Dr. Patton had passed to the devisees and legatees, unaccompanied by any claim that the distribution was irregular or in fraud of the rights of the defendants in error. As a consequence, it resulted as matter of law that the pleading reflected no facts indicating liability on the part of the executor as such, and as further consequence of which verdict ought to have been directed as requested. It is true, as argued by defendants in error, the evidence adduced on trial does not accompany the record. We have considered that fact and the significance that may or ought to be attached to it. Ordinarily it is and will be presumed, in the absence of a statement of facts, that every fact necessary to sustain the verdict and judgment, which is responsive to and follows the relief sought by the complaint or petition, was proven. It will not be presumed, however, that facts were proven which will sustain verdict and judgment for relief not sought or to which the parties were not entitled under the broadest construc-

tion of the pleading. Obviously such evidence and judgment are without warrant in law. Such is the situation presented by the record before us. We may not affirm the result, however just the claim against the estate may be conceded to be, since there was an admitted failure to allege personal liability against the executor resulting from fraud, waste, mismanagement, misapplication, etc.

"As we have also indicated, the court overruled an exception of plaintiffs in error, A. C. and C. H. Patton, challenging the sufficiency of the allegations of the pleading to constitute a cause of action against them personally. They presented the same contention in the form of a requested peremptory instruction founded on the claim that the pleading would not authorize a personal judgment against them, but that the remedy was to subject the property received by them to the payment of the claim. We have reached the conclusion that the exception should have been sustained, failing in which the peremptory instruction should have been allowed. The substance of the allegations of the petition and trial amendment, as affecting the personal liability of the residuary legatees, is that, at the time of trial, all of the estate had passed from the control and possession of the executor of which estate mixed property, of the value of $75,000, was received by and was then in the possession of A. C. and C. H. Patton, residuary legatees, and in amount amply sufficient to satisfy the claim of the defendants in error. In construing the rights and remedies of creditors conferred by the various articles of the probate acts, the Supreme Court, in Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931, declared in substance that heirs, devisees, and legatees, who receive property belonging to an estate against which unpaid claims exist, do not become personally liable to the creditors or claimants, but that creditors' and claimants' remedy is to enforce their lien against the property in the hands of the beneficiaries. That case was considered on original submission and on motion for rehearing and opinions written on both occasions, in which former adverse holdings of that court were overruled, and while much criticism has since been directed against it by others, it is the rule by which this court is and should be controlled. There is contained in the opinion in that case the statement that 'the heir, devisee, or legatee would doubtless be liable to the creditor for the injury done him in defeating his lien by * * * disposing of the security.' In the subsequent case of Middleton v. Pipkin, 56 S. W. 240, the First Court of Civil Appeals declares in effect that, if it appears from the pleading of the parties that the property is at time of the suit in possession of the executor, the heir, devisee, or legatee, the remedy is, as said in Blinn v. McDonald, supra, to enforce the lien against the same, but that, if it appears from the pleading that the heirs, devisees, or legatees have disposed of the property, or so changed its form as to render it impossible of identification, a personal recovery can be had for its value; the liability in such cases being clear. The case last cited is, in our opinion, correct and in consonance with Blinn v. McDonald. The pleading in the case at bar, however, charged that plaintiffs in

error had received of the executor and then had in their possession the mixed property enumerated of value more than sufficient to satisfy the claim of the defendants in error. By that allegation no personal liability against the legatees was shown or could be lawfully maintained. The remedy was to proceed to enforce the creditors' lien against the property with the aid of the court's equitable orders and process, which would have been effective, whatever may have been the character of the property. It is urged on this point, as it was on the issue first discussed, that, due to the absence of a statement of facts, this court is unable to tell what evidence might have been developed to sustain the personal judgment rendered against plaintiffs in error. We assume every fact necessary to support the allegations of the petition was proven, but the facts admissible under those allegations would not authorize a personal judgment against the legatees, and if, notwithstanding the allegations, proof was admitted which would sustain a personal judgment under proper allegations against the legatees, that fact could obviously lend no verity to a judgment not founded on the case made by the pleading.

"It is suggested that, in case this court should conclude that the remedy under the case made was against the specific property, we here now establish the lien thereon. We may not follow that course: First, because no such relief was sought in the court below; and, second, if it had been, the property shown to have been in the possession of the legatees at that time may since have passed into the ownership and possession of others.

"The judgment will be reversed, and rendered for plaintiffs in error."

See 221 S. W. 1034.

We are met at the very threshold of this case by a motion of defendants in error asking that the writ of error be dismissed. The writ was granted by the Supreme Court on January 26, 1921. On November 10, 1921, the motion to dismiss was filed. Said motion was superseded by an amended motion to dismiss, which was filed five days later. The motion has not been considered by the Supreme Court, but comes to us with the main case for review and recommendation.

The motion is based upon two grounds which we shall now discuss in their order. We will precede each of the grounds with a brief statement of explanatory facts.

The original opinion of the Court of Civil Appeals was delivered April 10, 1920.

Appellee in that court filed her original motion for rehearing in the Court of Civil Appeals on April 24, 1920. It was overruled on May 15, 1920.

On May 28, 1920, appellee, plaintiff in error here, filed a motion asking for permission to file a second motion for rehearing, alleging that the questions were very important, and that the personnel of the court had recently changed. This requested permission to file a second motion for rehearing was overruled and denied by the Court of Civil Appeals on June 16, 1920.

241 S.W.—8

In the meantime, on June 14, 1920, counsel for Mrs. Smith, plaintiff in error here, filed petition for writ of error, which was granted as and when aforesaid.

[1] It was first contended by counsel for defendants in error that the judgment of the Court of Civil Appeals was not final when the petition for writ of error was filed, because of the pendency of the motion of plaintiff in error requesting permission to file a second motion for rehearing, and therefore the Supreme Court was without jurisdiction to grant the writ.

This contention is not sound. The law provides for the filing of one motion for rehearing. A litigant enjoys this privilege as a matter of right. Our system does not provide for a second motion for rehearing. Occasionally our courts grant such a privilege, for good cause shown, at their option. In the case of McGhee v. Romatka, 92 Tex. 241, 47 S. W. 520, the judgment of the Court of Civil Appeals was rendered on March 20th of a certain year, and no motion for rehearing was filed within the 15-day period thereafter. Finally a motion was filed on May 3 thereafter, but was not acted upon by the Court of Civil Appeals during that term of the court. It was acted upon at a later term of that court, but the Supreme Court held as follows:

"The rules require that a party desiring to apply to this court for a writ of error to a judgment of the Court of Civil Appeals shall file a motion for a rehearing in that court, and article 942 of the Revised Statutes provides, among other things, that the petition for the writ must be filed within 30 days from the overruling of the motion for a rehearing. This clearly implies that the motion must be filed within the time provided by law and must be acted on by the court. More than 30 days had elapsed from the rendition of the judgment in this case before the motion for a rehearing was filed. Since the judgment was not suspended by filing the motion, the application comes too late, and we have no power to consider it. Had the motion been seasonably presented, the case would have been different. It would have suspended the judgment, and, unless the court had acted before the end of the term, it would have carried the matter over to this."

Under above authority, a judgment of the Court of Civil Appeals is final, so far as the jurisdiction of the Supreme Court to grant a writ of error is concerned, at the termination of the rights given litigants by law. No motions filed beyond the ones recognized by statute or rules of the court suspend the judgment of the Court of Civil Appeals. Consequently no pendency of a motion merely seeking permission to file a second motion for rehearing would suspend the judgment of the Court of Civil Appeals and prevent the attaching of the jurisdiction of the Supreme Court.

[2] Again, it is definitely settled by two

very recent decisions of the Supreme Court, in opinion by former Chief Justice Phillips, that petition for writ of error must be filed within·30 days of the overruling of the original motion for rehearing. Otherwise a different rule would permit an extension of the time fixed by the statute for the filing of the petition for writ of error, simply through the filing of successive motions of the same character. See Vinson v. Carter, 106 Tex. 273, 166 S. W. 363; Henningsmeyer v. Bank, 109 Tex. 116, 195 S. W. 1137, 201 S. W. 652. Under the three decisions of our Supreme Court above referred to, counsel for plaintiff in error filed petition for writ of error in proper time. It was filed in 30 days after the original motion for rehearing was overruled. The jurisdiction of the Supreme Court attached at that time beyond any question. Not only so, but, as the Court of Civil Appeals denied the request of plaintiff in error for permission to file a second motion for rehearing in that court, its original judgment remained final, and no conflict of jurisdiction between the Court of Civil Appeals and Supreme Court has arisen for adjustment. Realizing the force of above authorities, counsel for defendants in error, in their last argument, seem to concede the jurisdiction of the Supreme Court to consider this case, except for their present contention that plaintiff in error is estopped to claim her rights in the Supreme Court because she waived her right to the writ of error by resorting to a separate, distinct, and inconsistent remedy when she sought permission to file a second motion for rehearing in the Court of Civil Appeals.

[3] In support of their motion to dismiss the writ counsel cite us to no authorities based upon the facts here presented. They did cite many cases holding that a litigant will not be permitted to seek the same relief in more than one court at one. and the same time. This is elementary. If the Court of Civil Appeals had granted the motion of plaintiff in error and permitted her to file a second motion for rehearing, and counsel had availed themselves of that permission and filed such second motion, while the petition for writ of error was pending in the Supreme Court, then we think counsel for defendants in error would have cause for complaint, and counsel for plaintiff in error would be called upon to choose which remedy they wished to pursue. They could not continue to pursue this cause and ask the same relief in both courts.

But what are the facts in this case? As already stated, no permission was given by ·the Court of Civil Appeals for the filing of the second motion for rehearing. Until such permission was granted, we do not think anything was before that court. Not only ,so, but, if the permission had been granted, counsel could then have decided whether or not they would actually file the second motion. Until they filed it we do not think defendants in error have any ground for complaint, for until the second motion was filed, after permission granted, there could be no inconsistency upon the part of plaintiff in error.

Counsel for defendants in error admit that plaintiff in error could have abandoned or withdrawn her request for permission to file the second motion for rehearing when she filed the petition for writ of error, but that she sat by and did not do so.

[4] Plaintiff in error contends that, if abandonment of said motion was necessary at all, then it was abandoned both expressly and by implication. . In support of these contentions and in reply to this motion to dismiss, counsel for plaintiff in error ˙submit the following affidavit:

"State of Texas, County of Dallas.

"Before me, the undersigned authority, a notary public in and for Dallas county, Tex., on this day personally appeared A. S. Rollins, who, being by me first duly sworn, deposes and says that he is one of the attorneys of record for plaintiff in error, Mrs. Ida J. Smith, executrix, in the case of Ida J. Smith, Executrix, Plaintiff in Error, v. A. C. Patton et al., Defendants in Error, pending in the Supreme Court of the state of Texas; that as such attorney he had exclusive charge of the preparation of the motion for rehearing, the motion for leave to file a supplemental motion for rehearing, and of the preparation and filing of the petition for writ of error; that on the 14th day of June, A. D. 1920, the Court of Civil Appeals not having passed on the motion for leave to file, affiant presented to the clerk of the Court of Civil Appeals for the Fifth Supreme Judicial District the original application for writ of error and a copy of same for filing, and in presenting said petition for writ of error expressly stated to the clerk that he waived and withdrew his motion for leave to file a supplemental motion for rehearing, and that on the same day, just after filing with the clerk the petition for writ of error, affiant called on Judge J. M. Talbot, at that time a member of the Court of Civil Appeals, and stated to Judge Talbot that he had waived and abandoned his motion for leave to file and had filed his petition for writ of error, and that in reply to such statement Judge Talbot said that the court had already overruled the motion for leave to file; that affiant filed no written statement with the Court of Civil Appeals abandoning the motion for leave to file, for the reason that at that time and now affiant believed that the filing of the petition for writ of error and his express statement that he had waived and abandoned his motion for leave was a sufficient waiver and abandonment of the motion for leave to file, and that either one would have been a sufficient waiver and abandonment of said motion.
          "[Signed] A. S. Rollins.

"Subscribed and sworn to before me this, the 18th day of November, A. D. 1921. R. G. Smith, Notary Public in and for Dallas County, Texas."

Of course, the proper method of withdrawing the motion would have been by a request in writing, but the uncontroverted affidavit does at least show that counsel for plaintiff in error was not experimenting with both courts at the same time. Counsel for defendants in error make certain comment on the fact that the affidavit refers to a conversation with a judge now deceased. That is true, but the clerk of the court seems to have been available, and, if Attorney Rollins had not told him that he wanted to withdraw the pending motion when he filed the petition for writ of error with said clerk, we take it that able counsel for defendants in error could have obtained a controverting affidavit from said clerk. None was obtained. It is only fair to assume, then, that counsel for plaintiff in error really tried to abandon the motion now under fire, even though he may not have done so in the manner provided by law.

[5] But, even if it be held that there was no express withdrawal of the motion which can be recognized in law, we think the filing of the petition for writ of error was of itself an abandonment by implication of the motion for leave to file a second motion for rehearing.

An appeal will be considered as abandoned where appellant does an act inconsistent with a prosecution of it. Cyc. vol. 3, p. 201.

This rule finds support in numerous authorities. For instance, in the case of Wandelohr v. Grayson County National Bank (Tex. Civ. App.) 90 S. W. 180, in which a writ of error was denied by the Supreme Court, the court says:

"Again, the legal effect of the suing out of the writ of error on July 1, 1905, pending the appeal, and 12 or 13 days before the expiration of the time within which the transcript might have been filed in this court, was an abandonment of the appeal."

To the same effect are the decisions of other jurisdictions. See Slobodisky v. Curtis, 58 Neb. 211, 78 N. W. 522; Smith v. Morrill, 11 Colo. App. 284, 52 Pac. 1110; Shaw v. Robinson, 51 Neb. 164, 70 N. W. 953.

We see no inconsistency in the action of counsel for plaintiff in error in going ahead with the petition for writ of error within 30 days of the overruling of the original motion for rehearing. In view of the decisions in this state, we think this action evidenced commendable diligence on their part. In seeking permission to file second motion for rehearing in the Court of Civil Appeals, counsel doubtless hoped for the granting of such permission before the time when they would have to file petition for writ of error. When it finally appeared that this hope was in vain, counsel filed the petition for writ of error, making efforts as aforesaid, to expressly abandon the motion now under fire.

We do not think the writ of error in the Supreme Court should now be dismissed because the petition was filed during an alleged pendency of a motion by plaintiff in error in the Court of Civil Appeals asking permission to file a second motion for rehearing there.

In the second place, defendants in error request a dismissal of the writ because plaintiff in error filed a new suit in the district court of Dallas county, Tex., on April 20, 1920, just 10 days after the Court of Civil Appeals rendered its opinion in the case at bar. As a ground for this contention defendants in error assert that plaintiff in error, in filing this new case in the district court, acquiesced in the decision of the Court of Civil Appeals, and any further action on its part in the Supreme Court in the case at bar would be inconsistent. Counsel cite no Texas case in support of this contention.

In reply to above contention, plaintiff in error sets forth her views in the following language:

"The suit filed in the district court is a suit to fix and foreclose a lien held by the plaintiff in error by virtue of the distribution of the estate of E. G. Patton, deceased, without first having paid her claim against that estate. By instituting and prosecuting to final judgment the suit pending before this court, it might be contended that plaintiff in error has waived her right to fix and foreclose her lien, but the filing of a subsequent suit to fix and foreclose a lien cannot be held as a waiver of the present suit. The filing of the second suit, it is apparent, was for the purpose of saving to plaintiff in error, against a plea of limitation, any cause of action she might have left in the event the judgment of the Court of Civil Appeals becomes final. Certainly no court will hold that, in order to protect her right in the present action, she must sit by and permit the running of the statute of limitation as against any action which the Court of Civil Appeals may have left her; but, on the contrary, the court has held, and will hold, that it was her right to seasonably file such a cause as would protect to her such rights as might be left her under the opinion and judgment of the Court of Civil Appeals."

[6, 7] In considering this contention, our first thought is that the courts of our state do not hold that the filing of a second suit abates the first, or is a waiver thereof. Our courts only hold that, upon proper pleading, a plaintiff may be required to elect which suit he will prosecute to final judgment. The record discloses no effort on the part of defendants in error in the new district court case to have the same dismissed because of the pendency of this case in the Supreme Court. Nor do the defendants in error make any contention here that plaintiff in error is seeking the same relief here and in the new case in the district court. That being true, we do not think there is any inconsistency

in the pendency of the new suit below while this case is pending in the Supreme Court.

[8] Nor do we think that the filing of this new case in the district court was an acquiescence in the opinion of the Court of Civil ·Appeals. It was only an effort to conserve her rights under that opinion, if it became ·final. Plaintiff in error still contends that the judgment of the district court in the case at bar was the correct one and prays for its affirmance. The new district court case is only an alternative plea in line with the opinion of the Court of Civil Appeals in the case at bar, and to be availed of in case that opinion became final. The filing of this new suit was but another evidence of diligence on the part of her counsel to conserve, if possible, her legal rights under any and all circumstances.

There is a Texas case directly in point in which an appellant, pending appeal in one case, filed a similar suit in another district court. We refer to the case of O'Fiel v. Janes, 220 S. W. 371, in which the Court of Civil Appeals says:

"The rule is thus stated in 3 Corpus Juris, 665: 'In order to bar the right of appeal upon the ground of acquiescence, the acts relied upon must be such as to clearly and unmistakably show acquiescence, and it must be unconditional, voluntary, and absolute.' This record does not show that O'Fiel further prosecuted his suit in the Fifty-Eighth district court. It is shown by this record that he was diligent in perfecting his appeal. In due time he filed his motion for new trial. On the 28th of March, 1919, he filed an amended motion for new trial. This was followed by the filing of an appeal bond and briefing the case. With this show of diligence before us in perfecting this appeal, can it be said as a matter of law, that O'Fiel unmistakably acquiesced in the judgment rendered against him? We do not think so. As in Barnes v. Lynch, 9 Okl. 11, 59 Pac. 995, it seems to us that O'Fiel's conduct in filing this amended petition in the Fifty-Eighth district court was only an effort on his part to save and protect himself in said suit in case he should lose his appeal in this case. In the Barnes-Lynch Case Judge Macatee, of the Supreme Court of Oklahoma, reviewed very fully the authorities on this proposition, and, among many cases, cited Jackson v. Michie, 33 La. Ann. 723, wherein the court said: 'To take away the right of appeal, there must be an unconditional, voluntary, and absolute acquiescence in the judgment rendered, on the part of the appellant. * * * It doubtless often happens that a plaintiff in whose favor a verdict is rendered, though it does not give him all that he thinks he is entitled to, is willing to acquiesce therein and receive what it gives him; * * * but such conditional acquiescence in a verdict does not deprive him of the right of appeal. * * * An appeal is an important right, which should never be denied, unless its forfeiture or abandonment is conclusively shown.'"

The Supreme Court denied a writ of error in the case last quoted from. We find no Texas case to the contrary, and we think the Court of Civil Appeals correct in their holding in the case of O'Fiel v. Janes, supra.

Therefore we are of the view that there was no acquiescence on the part of plaintiff in error in the opinion of the Court of Civil Appeals in the instant case, when she filed a new suit in the district court in line therewith. We do not think the writ of error here should be dismissed because of the filing of such new suit in the district court.

We recommend that the motion of defendants in error asking that the writ herein be dismissed be in all things overruled and denied.

[9, 10] Reverting now to a consideration of this case upon its merits, we have concluded that the opinion of the Court of Civil Appeals hereinbefore set out is 'correct, except in so far as that court renders judgment for defendants in error. We think, under the facts and pleadings before the Court of Civil Appeals, it should have reversed the judgment of the trial court and remanded the cause for another trial in accordance with the rules laid down in the case of Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931. We think the Court of Civil Appeals in the case at bar has properly construed the Supreme Court's opinion in the case of Blinn v. McDonald, supra, and that the Court of Civil Appeals did likewise in the case of Middleton v. Pipkin, 56 S. W. 240. It is our view that those cases govern the instant one. Under those authorities and under the pleadings in the case at bar, the executor, as such, was not liable. Nor were the two residuary legatees personally liable. The pleadings of plaintiff in the trial court alleged that the property of the estate of the value of about $75,000 still remained in the hands of the residuary legatees, having been distributed to them. That being true, plaintiff in error's remedy was against the property in the hands of such legatees, and they were not personally liable. She should have followed the property and fixed her lien thereon, as held in Blinn v. McDonald, supra.

It will be seen, therefore, that the judgment of the trial court, in the face of such pleadings, must be reversed.

[11, 12] Counsel for plaintiff in error insist that, under the prayer for general relief, the Supreme Court can reform the judgment of the trial court and fix a lien upon the property described in the pleadings. We do not think so. The specific prayer in the pleading was for a personal judgment against the legatees. There was nothing in the pleading even remotely suggesting to defendants in error that any foreclosure on the property would be in any way attempted. A prayer for general relief will not authorize a judgment inconsistent with the

specific relief sought. A foreclosure judgment on property in the hands of the legatees is, in our opinion, inconsistent with a prayer for personal judgment against them.

In Behren's Drug Co. v. Hamilton, 45 S. W. 622, Justice Key says:

"It is true, there was also a prayer for general relief, and under that prayer the plaintiff might have been entitled to a judgment of foreclosure, but for the fact that such relief would have been inconsistent with the specific relief that was asked. * * * When the main object of a petition is to recover a particular judgment, specified in the prayer, different relief, inconsistent with the relief prayed for will not be granted, although the petition prays for general relief"

Again, we quote as follows from the opinion in the case of Denison v. League, 16 Tex. 400:

"He makes no pretense of charging damages for the value of these lands, only in the event which is to be set up by a supplemental petition, and, if the facts are true, there would be no more obstacle in his procuring a decree, on this part of his petition in rem for the specific lands sued for, than there would have been in sustaining a claim for damages. And to permit him, after so framing his petition, to claim damages, contrary to the specific relief prayed, under his general prayer for relief, would operate as a surprise to the other party; as no one would believe, from the structure of this part of the petition, that damages would be the object sought. And damages would not be consistent with the facts stated in the petition for a specific conveyance. Relief is sometimes allowed different from the relief prayed under the general prayer for relief; but the relief granted in such cases must be consistent with the objects of the petition."

Our Supreme Court expressly approved the case last quoted in writing its opinion in Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391. •

[13] Under these authorities we do not think, under any portion of the pleadings of plaintiff in the trial court, a judgment foreclosing the lien on this property would have been lawful. The judgment must have some basis in the pleadings, and be responsive thereto, no matter what the testimony may be. Therefore we cannot recommend a judgment of any kind in favor of plaintiff in error, but can only recommend a remanding of the case for another trial.

Furthermore, as said by the Court of Civil Appeals, this property may by this time have passed into the ownership or possession of others, as innocent purchasers, and therefore beyond the reach of plaintiff in error. For that reason also we do not think a judgment should be here entered fixing a lien on the property. We feel that this is a case where justice for all parties would be better subserved by remanding it for a new trial.

[14] As said by the Court of Civil Appeals, following the case of Blinn v. McDonald, if the legatees have disposed of the property, or so changed its form as to render it impossible of identification, a personal recovery can be had of the legatees for its value.

We take occasion to say that the rules laid down in Blinn v. McDonald seem to us to be sound and just. Creditors of an estate should follow the property first, and when it has passed into the hands of innocent purchasers, under sale from the legatees, then the latter should be held personally liable to the extent of its value. It seems to us that no one should complain because of these rules. They are the law in Texas, for that decision of our Supreme Court has never been modified or overruled. It seems that Judge Denman went into this matter most exhaustively and overruled motion for rehearing in the case just a day or two before he resigned from that court.

[15] Counsel for plaintiff in error contend that the erroneous refusal of the trial court to sustain an exception does not authorize the appellate court to reverse and render a case. In other words, if the trial court had sustained the exception, the plaintiff in the court below would have had an opportunity to amend and meet the exception. That opportunity should not be cut off by the Court of Civil Appeals, but the cause should be remanded so that an opportunity be given to plaintiff to amend her pleadings so as to secure a trial of her case in conformity with the law as announced by the Court of Civil Appeals. That this contention is sound we think is beyond doubt. See Miller v. Drought (Tex. Civ. App.) 102 S. W. 145; Morrill v. Smith County, ·89 Tex. 545, 36 S. W. 56; Haydon v. Kirby, 31 Tex. Civ. App. 441, 72 S. W. 198; St. L., S. F. & T. Ry. Co. v. Seale (Tex. Civ. App.) 160 S. W. 317; Ogg v. Ogg (Tex. Civ. App.) 165 S. W. 912; Jirou v. Jirou, 136 S. W. 493; Tillman v. Erp (Tex. Civ. App.) 121 S. W. 547; Carter v. Olive (Tex. Civ. App.) 128 S. W. 478; O'Bannon v. Pleasants (Tex. Civ. App.) 153 S. W. 719; Mitchum v. C., R. I. & G. R. R. Co., 107 Tex. 34, 173 S. W. 878; Combes v. Stringer, 106 Tex. 427, 167 S. W. 217; Dunlap v. Squires (Tex. Civ. App.) 186 S. W. 843; G., C. & S. F. Ry. Co. v. McKie (Tex. Civ. App.) 191 S. W. 576; W. U. T. C. v. Verhalen (Tex. Civ. App.) 204 S. W. 240; Moon Buggy Co. v. Moore et al. (Tex. Civ. App.) 196 S. W. 328; M., K. & T. v. Langford (Tex. Civ. App.) 201 S. W. 1087; F. W. & D. C. Ry. Co. v. Copeland (Tex. Civ. App.) 164 S. W. 857; Camden Fire Ins. Co. v. Yarbrough (Tex. Civ. App.) 215 S. W. 842.

[16] Counsel for defendants in error conceded the correctness of the proposition just above stated. But they contend that the judgment of the Court of Civil Appeals rendering the instant case should be affirmed,

because they asked the trial court to give a peremptory instruction to which they were entitled, under the law. Counsel cite no authorities for this proposition except one case from the Court of Civil Appeals, Ehrenworth v. Putnam, 55 S. W. 190, which was reversed and rendered because the case had been fully developed. That case, relied upon by counsel, is not in point here, where we are met by a case which has not been fully developed. We have an apparently valid claim against an estate, and it should not be cut off by any such judgment as the one rendered by the Court of Civil Appeals. That claim can be satisfied by recourse to the property' first, and possibly through a personal judgment against the legatees, under the circumstances hereinbefore set out.

The trial court was consistent in overruling exceptions of defendants in error to the effect that, under the pleadings, they were not personally liable, and also in refusing peremptory instructions for defendants in error. In other words, upon the theory of law adopted by the trial court, the peremptory charge was not proper. Plaintiff in the court below recovered on her claim upon the theory of law used on the trial. If the court had sustained this exception, she would have had a right to amend her pleadings to meet it. In that event the peremptory charge would have been inapplicable. Consequently the whole question reverts to the beginning when the exception was erroneously overruled. The mere refusal to give a peremptory instruction based upon the same law as the exception which was overruled will not authorize the rendering of judgment in a case circumstanced as was the one at bar. The Court of Civil Appeals cites no authority for rendering judgment under these circumstances. Having won her case and established her claim upon the theory of law adopted by the trial court, this plaintiff in error should, in our judgment, have a chance to establish her case upon the theory of law announced by the Court of Civil Appeals in reversing the trial court.

The Supreme Court, in Blinn v. McDonald, supra, under almost identical circumstances, reversed and remanded the case in order that plaintiff there might amend and have another trial.

[17] The rule which we think applies to the case at bar has been ably stated by Judge Taylor, of the Commission of Appeals, in case of Insurance Co. v. Yarbrough, 215 S. W. 844, as follows:

"Where, upon reversal of a case, it seems probable that the ends of justice may be better subserved by remanding than by rendering judgment, the former course should be pursued, notwithstanding it is apparent that a full consideration of the case necessitates that the pleadings be amended. Buzzard v. Bank, 67 Tex. 83, 2 S. W. 59, 60 Am. Rep. 7; Combes

et al. v. Stringer, 106 Tex. 427, 167 S. W. 217; H. & T. C. Ry. Co. v. State, 24 Tex. Civ. App. 117, 56 S. W. 228; K. C., M. & O. Ry. Co. v. Pope, 152 S. W. 185; Id., 153 S. W. 163; Ft. Worth & D. C. Ry. Co. v. Copeland, 164 S. W. 857.

"We therefore recommend that the judgments of the Court of Civil Appeals and the district court be reversed, and the cause remanded."

Another case which we think has forcible application here is that of Baker v. Shafter, 231 S. W. 349, in which the Commission of Appeals, in an opinion by Judge Spencer, says:

"It is apparent, we think, that plaintiff did not rely upon discovered peril for a recovery. In this condition of the record, it is improper to inject such an issue into the case. The judgment must conform to the issues raised by the pleading, and upon which the case was tried. Courts are not at liberty to ignore the findings of the jury in response to issues tried and submitted, and to render judgment based upon a theory not relied upon for recovery.

"The case, in our opinion, will, of necessity, have to be reversed, and, as the Court of Civil Appeals found that there was evidence raising the issue of discovered peril, the ends of justice will be best subserved by remanding the cause for another trial. Camden Fire Ins. Co. v. Yarbrough, 215 S. W. 842, and authorities there cited.

"Therefore we recommend that the cause be reversed, and remanded for a new trial."

In the case of Baker v. Shafter the only ground of recovery left to plaintiff was discovered peril. The pleadings were insufficient to present that issue. No such issue was presented to the jury. But the Court of Civil Appeals found that the issue was raised by the evidence. Acting upon the latter finding, the Supreme Court, upon recommendation of the Commission of Appeals, remanded the case for a new trial under appropriate pleadings raising that issue.

In the case at bar the defendants in error appealed from an adverse judgment without furnishing us with a statement of facts. Therefore we must look to the pleadings for allegations of fact. Under these pleadings we find that there is a basis of recovery, and we think this case should be remanded for a trial under amended pleadings setting up that theory. Certainly in no other way could the ends of justice be subserved.

Therefore we recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and that the cause be remanded to the former for a new trial in conformity with the rules of law laid down by the Court of Civil Appeals, which we think are correct.

CURETON, C. J. It is ordered by the Supreme Court that the judgments of the district court and of the Court of Civil Appeals be reversed, and that this cause be re-

manded to the district court for a new trial in accordance with the opinion of the Court of Civil Appeals, as recommended by the Commission of Appeals.